## A98A1320. GAMBLE v. THE STATE.
### (510 SE2d 69)

RUFFIN, Judge.

A jury found Edward Gamble guilty of aggravated assault. Gamble appeals, asserting numerous grounds, and we affirm.

1. Gamble contends that there was insufficient evidence to support his conviction for aggravated assault because there was no evidence showing that he used his hands as deadly weapons. This contention is without merit.

The offense of aggravated assault consists of two essential elements: (1) an assault and (2) aggravation by use of "a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). The evidence concerning this offense, viewed in a light to support the verdict, shows that on September 12, 1994, Sabrina Gragg, a nurse at Lee Arrendale Correctional Institute, received a radio call that Gamble, an inmate, was complaining of chest pain. Gragg testified that while she was completing another inmate's chart, she looked up and saw Officer Walter Shedd with Gamble, who was handcuffed in front and "kind of jumping around," outside her door. While Gragg was looking down at her chart, someone hit her on the face. Although Gragg did not see who hit her, Gamble was the only one in the room with her at the time. Sergeant Shedd testified that on their way back to his cell, Gamble "made . . . a loud exclamation" to his fellow inmates, bragging that "I hit that bitch." Gamble was wearing handcuffs during this entire incident.

Dr. Don Blakeslee, an ear, nose, throat, head, and neck specialist, testified that Gragg's injuries, which included a bruised eye and a "flattened," broken left side of the face, were consistent with being struck with fists, hands, and handcuffs. On cross-examination, Dr. Blakeslee confirmed that such a severe injury could occur with a single blow.

The indictment alleged that Gamble's "hands, fists and handcuffs [were used] as deadly weapons."

Although Gamble correctly notes that *Smith v. Hardrick*, 266 Ga. 54, 55 (2) (464 SE2d 198) (1995) supports the proposition that hands are not "per se deadly weapons," we disagree with his assertion that the State provided no evidence that his hands were different from anyone else's. In fact, Sergeant Shedd testified that at no time during the altercation were Gamble's hands unrestrained from his handcuffs. Moreover, Dr. Blakeslee testified that Gragg's severe injuries were consistent with being struck by hands, fists, *and* handcuffs.

Accordingly, we find that there was sufficient evidence to sustain

Gamble's conviction for aggravated assault. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Gamble also claims that his trial should have been barred by OCGA § 17-7-53.1 because two previous indictments for the same allegation were quashed before the return of the third indictment upon which he was tried.

On August 9, 1995, the Habersham County Grand Jury returned an indictment charging Gamble with aggravated assault. A second indictment was filed on January 11, 1996, charging him with aggravated battery. On March 7, 1996, upon the State's motion, the trial court entered an order of nolle prosequi as to the first indictment because the case had been re-indicted. Upon Gamble's general demurrer, the trial court quashed the second indictment on February 29, 1996, because it failed to set forth each element of the crime charged. Thereafter, the State filed a third indictment on September 4, 1996, again charging Gamble with aggravated assault. Gamble was tried on the third indictment.

OCGA § 17-7-53.1 provides that "[i]f, upon the return of two 'true bills' of indictments or presentments to the grand jury on the same offense, charge, or allegation, the indictments or presentments are quashed for the second time, whether by ruling on a motion, demurrer, special plea or exception, or other pleading of the defendant or by the court's own motion, such actions shall be a bar to any future prosecution of such defendant for the offense, charge, or allegation." Gamble contends that the second indictment, which superseded the first, in effect "quashed" the first by operation of law. Additionally, he asserts that the State was erroneously allowed to enter a nolle prosequi on the first indictment in an effort to preempt its "unavoidable quashing."

In *Gourley v. State*, 268 Ga. 235, 236 (1) (486 SE2d 342) (1997), the Supreme Court, in accord with "the rule of construction requiring us to interpret a statute so as to give meaning to all of its parts," refused to extend the protections of § 17-7-53.1 to bar the defendant's future prosecution based upon the state's entry of two nolle prosequi because "neither the first nor the second indictment was quashed as a result of action *by [defendant] or on the court's own motion.*" (Emphasis supplied.) See also *Redding v. State*, 205 Ga. App. 613, 614-615 (2) (423 SE2d 10) (1992) ("The bar under the code section only follows actions adverse to the State, putting it out of court. 'Nolle prosequi,' on the other hand, is the State's formal action on its decision not to further prosecute that indictment. . . . It is the prerogative only of the State, which may enter it with court approval.").

Likewise, Gamble can point to no action by himself or the trial court which would persuade us to extend the protection of OCGA § 17-7-53.1 to the present case where the State's filing of a second

indictment preceded its motion for nolle prosequi on the first indictment. The trial court's order granting Gamble's general demurrer to the State's second indictment is the only action which falls within the dictates of this statute. Because the statute at issue requires the quashing of *two* previous indictments before its protection is triggered, the trial court correctly held that § 17-7-53.1 was not a statutory bar to Gamble's prosecution under the third indictment. See *Gourley*, supra; *Redding*, supra.

3. Gamble asserts that the indictment for aggravated assault upon which he was tried was so fundamentally flawed that no conviction could arise from it. In particular, he contends that the indictment failed to allege an assault, which is an essential element of the crime of aggravated assault. See OCGA § 16-5-21 (a). We disagree and find that the indictment sufficiently alleged an assault.

"The Sixth Amendment to the United States Constitution states that criminal defendants shall 'be informed of the nature and cause of the accusation against them.' It is established in Georgia that satisfaction of this fundamental principle requires that a criminal indictment which does not recite language from the Code must allege every essential element of the crime charged. Furthermore, each count set forth in an indictment must be wholly complete within itself, and plainly, fully, and distinctly set out the crime charged in that count. Unless every essential element of a crime is stated in an indictment, it is impossible to ensure that the grand jury found probable cause to indict. Consequently, there can be no conviction for the commission of a crime an essential element of which is not charged in the indictment. If an accused individual can admit to all of the allegations in an indictment and still be not guilty of a crime, then the indictment generally is insufficient and must be declared void." (Citations omitted.) See *Smith*, 266 Ga. at 54-55 (1).

The indictment at issue charged Gamble with aggravated assault and alleged that he "unlawfully and maliciously by striking Sabrina Gragg about the head and face with fists, hands and handcuffs, said hands, fists and handcuffs being used as deadly weapons likely to cause bodily injury and causing facial injuries including bruising, and fracture of facial bones, to wit: the zygomatic arch." "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon." OCGA § 16-5-21 (a) (2). Gamble concedes that the indictment alleges the use of a deadly weapon; however, he contends that the indictment failed to allege an assault.

In that regard, an assault is defined as (1) an attempt to commit a violent injury to the person of another or (2) the committing of an act which places another in reasonable apprehension of immediately receiving a violent injury. OCGA § 16-5-20 (a) (1), (2). Clearly, the indictment at issue does not track the exact language of the assault

statute. However, our inquiry does not end there. As the Supreme Court held in *Smith*, supra, an indictment which does not recite the language from the Code is nevertheless proper when it alleges every essential element of the crime charged. To comply with the Code section for an assault, an indictment must allege that a defendant *intended* to inflict a violent injury *or* that he placed the victim in reasonable apprehension of being injured violently. *Smith*, supra at 56 (3). It would be difficult to conclude that Gragg was placed in reasonable apprehension of being injured violently when she did not see Gamble strike her. However, the indictment in this case alleged that Gamble "maliciously" struck Gragg, thus properly alleging the necessary element of intent. See *McClain v. State*, 232 Ga. App. 282, 283 (1) (502 SE2d 266) (1998) ("maliciously" means "intentionally and without justification or serious provocation").

Accordingly, we find that the indictment sufficiently alleged an assault, a key element of the offense of aggravated assault.

4. Gamble contends that the trial court violated his right to the assistance of counsel by forcing him to proceed to trial without an attorney. This enumeration is also without merit.

"In determining whether or not an accused has adequately waived his right to counsel and elected to exercise his constitutional right to represent himself, the courts will apply the standard set forth in *Johnson v. Zerbst*, 304 U. S. 458 (58 SC 1019, 82 LE 1461) (1937)[,] . . . [which provides that] '[t]he determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " (Citations and punctuation omitted.) *Clarke v. Zant*, 247 Ga. 194, 196 (275 SE2d 49) (1981). Moreover, "the trial judge has the responsibility of determining whether the accused has intelligently waived his right to counsel." Id. "In order to establish a valid waiver, a trial judge must investigate as long and as thoroughly as the circumstances of the case before him demand. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter." (Citations and punctuation omitted.) *Kirkland v. State*, 202 Ga. App. 356, 357-358 (1) (414 SE2d 502) (1991). Finally, "when the defendant pleads not guilty and proceeds to trial without benefit of counsel, the State must show the decision to proceed pro se was made knowingly and intelligently." Id. at 358 (1).

Applying these standards to the present case, we note the following relevant facts. During a March 1997 hearing, the trial judge

asked Gamble if he had retained an attorney as he said he would at his arraignment two weeks earlier. Gamble stated that his mother was going to hire an attorney for him, but that she "still needed some more time." When Gamble went on to state that neither he nor his family knew "who to get in contact with" to get the information a lawyer would need, the trial judge explained that his attorney would "get in touch with the District Attorney's office." When the judge asked him whether he was ready for trial or whether he would need a public defender, Gamble responded that he needed a public defender to make a motion for a continuance.

The trial judge conducted another hearing in April 1997, at which time he asked the public defender appointed, to represent Gamble whether he had spoken with him. That attorney informed the court that he had spoken to Gamble twice and that each time Gamble had declined to use the public defender and had insisted his family would hire an attorney. Despite his unwillingness to use a public defender, the public defender did help Gamble (1) to file a general demurrer to his second indictment, (2) to file a motion for discovery, and (3) to file a motion for funds for expert assistance.

At the start of his trial, approximately eight months after the trial judge first inquired as to whether Gamble wished to have appointed counsel, Gamble appeared without counsel and told the trial judge he still "wish[ed] to go to trial this morning." The trial judge asked Gamble whether he understood the charges against him. After hearing the charge and indictment, Gamble said he understood them. Gamble also acknowledged that the judge had talked to him "many times about the fact that [he was] entitled to an attorney," but stated that he did not want a public defender. Gamble further acknowledged that he understood the danger involved in representing himself because he was not familiar with the law, that an attorney would know when to object and when to say things and when not to say things, and that the possible maximum sentence for aggravated assault could be as long as 20 years, to be served consecutive to the sentence he was already serving. Gamble also confirmed to the trial judge that he understood that the lawyer he thought his family had hired for him was not representing him.

Gamble, who is serving time for a previous conviction, had approximately eight months to secure private counsel prior to trial, and was in fact provided a public defender at the pre-trial stage, whose assistance he later refused on two occasions. See *Stocks v. State*, 224 Ga. App. 433, 434 (2) (481 SE2d 230) (1997). Gamble's never materializing indications that counsel would be retained, combined with his refusal on two occasions to accept a court-appointed attorney, is sufficient to constitute waiver. See, e.g., *Mercier v. State*, 203 Ga. App. 494 (2) (417 SE2d 430) (1992) (trial court authorized to

find that defendant's rejection of the assistance of the public defender, coupled with his insistence upon the appointment of counsel of his own choosing, was functional equivalent of a knowing and voluntary waiver of counsel); *Phipps v. State*, 200 Ga. App. 18, 19 (406 SE2d 493) (1991) ("defendant in a criminal action has 'the right to the effective assistance of counsel, not the right to the assistance of counsel satisfactory to the defendant.' ").

We also reject Gamble's argument that the trial court did not adequately investigate the validity of his waiver pursuant to the dictates of such cases as *Kirkland*, supra. "There is no magic language that must be used by a trial judge in determining that a defendant has made a valid waiver of his right to counsel. Rather, such determination must depend upon the particular facts and circumstances of each case." *Reviere v. State*, 231 Ga. App. 329, 330 (1) (498 SE2d 332) (1998). In that regard, the court, after having informed Gamble of his right to counsel twice before, advised him at the trial's start that it was to his advantage to have counsel, informed him of the possible sentence, and advised him of the charge against him. See *Wright v. State*, 222 Ga. App. 320, 321-322 (2) (474 SE2d 121) (1996) (defendant's choice to represent himself made after he was made aware of right to counsel and of dangers of proceeding pro se). Compare *Kirkland*, supra at 358 (judgment reversed where record did *not* reflect whether defendant was aware of facts essential to the understanding of his situation).

Finally, Gamble points to the absence of standby counsel in support of his contention that he was denied his right to assistance of counsel. However, "[a]lthough trial courts often require appointed counsel to remain in the courtroom as standby counsel after a defendant has elected to proceed pro se, there is no requirement that they do so. A criminal defendant has the right to be represented by counsel, and has the right to represent himself, but does not have the right to represent himself and also be represented by an attorney." *Reviere*, supra at 332.

Under these circumstances, we cannot say that the trial court violated Gamble's right to assistance of counsel at trial. Instead, we find that Gamble knowingly and voluntarily waived his right to counsel. See *Clarke*, supra. Furthermore, even had the trial court erred in allowing Gamble to represent himself, in light of "the strength and simplicity of the State's evidence," as outlined above in Division 1, we find it unlikely that Gamble's conviction was attributable to his lack of counsel at trial. *Hose v. State*, 161 Ga. App. 401, 402 (288 SE2d 675) (1982); see also *Reviere*, supra at 331.

5. In two enumerations, Gamble asserts that the trial court erred in failing to conduct a *Jackson v. Denno* hearing before admitting evidence of an incriminating statement and in admitting into

evidence an involuntary statement he made without the benefit of *Miranda* warnings. However, Gamble did not ask for a hearing, nor did he object to the State's introduction of his incriminating statement at trial.

These issues have previously been decided adversely to Gamble. First, "[i]n the absence of a proper objection, . . . there is no requirement for . . . a [*Jackson-Denno*] hearing. Due process does not require a voluntariness hearing absent some *contemporaneous* challenge to the use of the confession." (Citations and punctuation omitted.) *McNair v. State*, 190 Ga. App. 412, 413 (2) (379 SE2d 424) (1989); see also *Stocks*, supra at 435. Second, "[o]bjections to evidence, including confessions, may be waived through nonobjection at trial." *Reeves v. State*, 241 Ga. 44 (1) (243 SE2d 24) (1978) (citing *Wainwright v. Sykes*, 433 U. S. 72 (97 SC 2497, 53 LE2d 594) (1977)); see also *Kapua v. State*, 228 Ga. App. 193, 196 (2) (491 SE2d 387) (1997). Thus, Gamble has waived his right to our review of these issues on appeal.

Even if Gamble had properly preserved these issues for appeal, we find no error. Any written or verbal statements Gamble made to the officers regarding the victim were merely cumulative of the spontaneous statements he made to the other inmates that "I hit that bitch" and "I told you I was going to do it." See *Hardin v. State*, 269 Ga. 1, 3-4 (2) (b) (494 SE2d 647) (1998).

6. Gamble's contention that the trial court erroneously failed to charge the jury on the law of circumstantial evidence is also without merit. Gamble did not ask for such a charge, and he "correctly points out that it is error for the trial court to fail to give a charge on circumstantial evidence, even absent a request, *where the case against the defendant is based entirely on circumstantial evidence*." (Citation omitted.) *Edwards v. State*, 224 Ga. App. 332, 333 (2) (480 SE2d 246) (1997). However, this is not the case. Rather, the State presented direct evidence of the crime alleged.

The State presented evidence that Gamble admitted that he hit the victim to get a transfer and that he bragged to fellow inmates that he hit her. Accordingly, "[s]ince direct evidence of [Gamble's] guilt was presented, the trial court was not obligated to give the unrequested charge on circumstantial evidence." *Edwards*, supra; see also *Stubbs v. State*, 265 Ga. 883, 884 (2) (463 SE2d 686) (1995).

7. Gamble challenges the trial court's failure to charge the jury on the lesser included offense of battery. However, by not presenting the court with a written request for such charge, Gamble has waived his right to our review of this issue on appeal. *Dukes v. State*, 224 Ga. App. 305, 310 (6) (480 SE2d 340) (1997) (" 'failure to charge on a lesser included offense is never error absent a written request to do so.' ").

8. Lastly, Gamble maintains that the cumulative effect of the alleged errors discussed in Divisions 1-7 prevented him from receiving a fair trial. Because we find no errors, this contention is without merit.

*Judgment affirmed. Pope, P. J., and Beasley, J., concur.*

DECIDED DECEMBER 1, 1998 —
RECONSIDERATION DENIED DECEMBER 16, 1998

*Jacqueline J. Herring*, for appellant.
*Michael H. Crawford, District Attorney, Earnest J. McCollum, Assistant District Attorney*, for appellee.