A00A0555. CARSWELL v. THE STATE.
(534 SE2d 568)

ANDREWS, Presiding Judge.

Darren Edward Carswell appeals from the trial court's denial of his motion for new trial after his conviction by a jury of kidnapping, terroristic threats, child molestation, criminal attempt to commit rape, and assault with a deadly weapon.

1. Carswell's first enumeration is that the trial court erred in not permitting trial counsel to state and argue his motion for directed verdict and also that the trial court should have granted the motion based on the State's failure to prove that the charged acts occurred in

Twiggs County as alleged.[1]

No objection was voiced by trial counsel when the trial court stated, after Carswell's motion for directed verdict was made, that the court would allow the jury to consider the case and no further argument was needed. Therefore, we do not further consider this argument.

Examining the sufficiency of the evidence regarding venue, which was alleged in Twiggs County on all charges, and viewing the evidence in favor of the jury's verdict, *Mincey v. State*, 237 Ga. App. 463, 464 (2) (515 SE2d 433) (1999), it was that Carswell and Walker, the mother of victim L. S., had gone to school together and were neighbors in Danville. Danville is partially located in two counties, Twiggs and Wilkinson. Walker's home was in Wilkinson County, and Carswell lived within walking distance of her home.

On December 12, 1995, when she was 11 years old, L. S. was walking from church, where she had been practicing for a Christmas pageant, to her maternal grandmother's home not far from the church. Walker testified that L. S.' grandmother's house was located in Twiggs County.

As L. S. walked along, she saw Carswell, whom she knew, approach. He grabbed her by her arm and pushed her into some bushes and a ditch. Carswell tried to take her shirt off while holding her down with his knees on her legs, which he had spread. L. S. screamed and squirmed, but no one else was around. Carswell put his hands on her panties and rubbed her vaginal area. L. S. then managed to kick Carswell in the groin, causing him to grab himself and fall to the ground. She then ran away. As she was running, Carswell told her that, if she said anything, he would break her neck and burn her house down.

L. S. went on to her grandmother's house, where Walker was visiting her mother. L. S. did not mention the incident that day, because of fear. The next day, while L. S. was at the doorstep of Walker and her home, Carswell threw an iron pipe which struck L. S. in the ankle and caused swelling. Carswell said, "I told you I was going to get you."

L. S. then told her mother of the previous day's incident and the pipe throwing, and authorities were called. The place where the incident occurred on December 12, according to Walker, was within walking distance of her home in Wilkinson County, "not even a half a mile" away.

On December 14, Carswell made a statement to Georgia Bureau

---

[1] Pursuant to the recent mandate of *Felix v. State*, 271 Ga. 534 (523 SE2d 1) (1999), we consider both assertions.

of Investigation Agent Durham in which he acknowledged that, on December 12 around 6:30 p.m., he was walking on Pine Street in Danville when he saw L. S. He bumped into her, and she fell to the ground. He then knelt and was pulling on her shirt when he asked her, "what are you going to do[?]" Carswell stated that, when a black person asks a black person this, it means are you going to have sex. Carswell said L. S. declined and walked away. The next day, Carswell said he was walking across the backyard of an aunt of L. S. when he saw L. S. again. He had a 12-inch object in his hand which he thought was a stick but later learned was a pipe. He told L. S. if she told anyone, he would hurt her, and she would be in ashes. He acknowledged throwing the object at L. S.' feet. At trial, venue is a jurisdictional fact which the State must prove to the jury beyond a reasonable doubt. It is a question to be decided by the jury whose decision will not be set aside if there is any evidence to support it. *Cox v. State*, 241 Ga. App. 388, 391 (4) (526 SE2d 884) (1999); *Weidmann v. State*, 222 Ga. App. 796 (1) (476 SE2d 18) (1996) (physical precedent only). As provided in OCGA § 17-2-2 (b), "[i]f a crime is committed on, *or immediately adjacent to*, the boundary line between two counties, the crime shall be considered as having been committed in either county." (Emphasis supplied.)

Here, as to the four crimes alleged to have been committed by Carswell on December 12, there was sufficient circumstantial and direct evidence, as set out above, from which the jury could have concluded that the acts occurred in Twiggs County. Therefore, the evidence of venue on the first four counts was sufficient, and denial of the motion for directed verdict on that ground was not error. *Weidmann*, supra; *Pippins v. State*, 204 Ga. App. 318, 320 (4) (419 SE2d 28) (1992).

On the assault with a deadly weapon charge on December 13, the evidence is less clear. Nonetheless, it shows that L. S. was standing on the doorstep of her home in Wilkinson County within walking distance of Twiggs County when Carswell, walking through a nearby backyard, threw the pipe at her. This evidence is sufficient to trigger the provisions of OCGA § 17-2-2 (b) and was legally sufficient to prove venue in either Wilkinson or Twiggs County. Compare *In the Interest of N. T. S.*, 242 Ga. App. 109, 111 (2) (528 SE2d 876) (2000) with *Sypho v. State*, 175 Ga. App. 833 (1) (334 SE2d 878) (1985).

The maps introduced by Carswell during the motion for new trial hearing do not require a different result but, instead, show the efficacy of OCGA § 17-2-2 (b) in such a case.

2. Carswell's second enumeration is that the four December 12 crimes all merged as a matter of law or fact. Below, however, the only argument made was that the attempted rape and child molestation charges merged as a matter of fact, and that is all we consider.

Count 3 charged that Carswell committed child molestation by "fondl[ing] the genitals of [L. S.], a child. . . ." Count 4 charged that Carswell attempted to rape L. S., in that he "knowingly and intentionally [did] perform acts which constituted a substantial step toward the commission of said crime, to wit: [he] did pull [L. S.] into some bushes, try to take her shirt off, and did fondle the genitals of [L. S.]. . . ."

We agree that, as the crimes were alleged, while Carswell could be prosecuted for both child molestation and attempt to commit rape, the trial court erred in not merging the child molestation conviction into the attempt to commit rape conviction for sentencing purposes. *Caldwell v. State*, 263 Ga. 560, 562 (2) (436 SE2d 488) (1993); *Wofford v. State*, 226 Ga. App. 487, 488 (1) (486 SE2d 697) (1997); *Lewis v. State*, 205 Ga. App. 29, 30 (2) (421 SE2d 339) (1992).

3. In his third enumeration, Carswell contends the trial court erred in allowing the State to refer to Carswell's admissions in its opening statement and in allowing into evidence the alleged admissions without a *Jackson v. Denno*[2] hearing.

Carswell is correct that, "where the voluntariness of a confession is questioned it is necessary under the decision of *Jackson v. Denno*, supra, to have a separate hearing as to the voluntariness before it is finally presented to the jury for consideration." *Craver v. State*, 246 Ga. 467, 468 (1) (271 SE2d 862) (1980).

Here, however, Carswell denied making the statement, did not request a *Jackson v. Denno* hearing, and did not object to the introduction of that portion of the statement which related to the crimes charged. Under these circumstances, "[d]ue process does not require a voluntariness hearing absent some *contemporaneous* challenge to the use of the confession." (Citations and punctuation omitted; emphasis in original.) *Gamble v. State*, 235 Ga. App. 777, 783 (5) (510 SE2d 69) (1998). See also *Henderson v. State*, 204 Ga. App. 884, 888 (4) (420 SE2d 813) (1992).

There was no error.

4. Carswell contends, in his fourth enumeration, that he was denied his right to effective assistance of counsel by the failure to appoint counsel to represent him until two years after his arrest and after he had requested appointment of counsel at his initial appearance before a magistrate on December 18, 1995.[3]

Carswell was arrested without a warrant on December 13, 1995, and kept overnight in the Laurens County Jail. The next day, he was given a polygraph examination and questioned by GBI agents. Dur-

---

[2] 378 U. S. 368, 376 (84 SC 1774, 12 LE2d 908) (1964).

[3] With regard to this enumeration, the Georgia Indigent Defense Council has filed a brief as amicus curiae.

ing that questioning, as set out above, the State contends that he made certain admissions. Carswell was then kept in jail in Laurens County for a "week or two" until he was transferred to the Twiggs County Jail.

A warrant was issued on December 15, 1995, and Carswell appeared before a magistrate on December 18. As reflected by the Preliminary Arraignment Form, Carswell advised the magistrate at that time that he desired appointed counsel. No counsel was appointed at that time.

An indictment was returned on October 13, 1997, and Carswell was arraigned on November 14, 1997. Uniform Superior Court Rule 30.2 provides that:

> [b]efore arraignment the court shall inquire whether the accused is represented by counsel and, if not, inquire into the defendant's desires and financial circumstances. If the defendant desires an attorney and is indigent, the court shall authorize the immediate appointment of counsel.

Despite this requirement, Carswell was arraigned without counsel and, as far as reflected by the record here, without further inquiry concerning his previously expressed desire for counsel.

On January 12, 1998, Carswell completed his Application for Appointment of Counsel and Certificate of Financial Resources. That same day, the court entered its order appointing the Twiggs County Public Defender's Office to represent Carswell.

In *United States v. Cronic*, 466 U. S. 648, 658-659 (104 SC 2039, 80 LE2d 657) (1984), the Supreme Court reiterated the maxim that the right to counsel is the right to effective assistance of counsel and:

> that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. [Cits.] Moreover, because we presume that the lawyer is competent to provide the guiding hand that the defendant needs, [cit.], the burden rests on the accused to demonstrate a constitutional violation. *There are, however, circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.*

(Footnotes omitted; emphasis supplied.) *Id.*

Here, although Carswell did request counsel at the earliest opportunity available to him, he was not only not appointed counsel at that juncture, but was thereafter indicted and arraigned without counsel. Arraignment is one of those "critical stages" of a criminal proceeding during which an accused is entitled to representation. *Hamilton v. Alabama*, 368 U. S. 52 (82 SC 157, 7 LE2d 114) (1961). Compare *Dixon v. Hopper*, 237 Ga. 811 (229 SE2d 656) (1976) with *State v. Houston*, 234 Ga. 721, 723 (218 SE2d 13) (1975) and *Bache v. State*, 208 Ga. App. 591 (1) (431 SE2d 412) (1993). See also USCR 31.1.[4]

The State argues that the onus was on Carswell to complete the application and, apparently, until that was done, the State had no obligation to appoint counsel. The Guidelines of the Georgia Indigent Defense Council, however, refute this argument. Section 1.1 provides that "[c]ounsel *shall be provided* to all persons eligible[5] . . . whenever such a person is accused of a felony by indictment, warrant or warrantless arrest. . . ." (Emphasis supplied.) As of his arrest without a warrant on December 13, 1995, Carswell was entitled to counsel. Section 1.2 provides that "[c]ounsel *shall be appointed* for every eligible person in custody within 72 hours of arrest or detention." (Emphasis supplied.)

Under the specific facts of this situation and considering the length of time after which Carswell had requested counsel that he was deprived of counsel, we conclude that this is one of those unique cases in which no specific harm need be shown in order to require redress. *United States v. Cronic*, supra.

5. The remaining enumerations are either moot in light of our decisions herein or unlikely to recur upon retrial.

*Judgment reversed. Ruffin and Ellington, JJ., concur.*

DECIDED MAY 12, 2000 —
RECONSIDERATIONS DENIED JUNE 21, 2000 

*Sinnreich & Francisco, Elizabeth R. Francisco*, for appellant.
*Ralph M. Walke, District Attorney, Tracie J. Hobbs, Peter F. Larsen, Assistant District Attorneys*, for appellee.
*James C. Bonner, Jr.*, amicus curiae.

---

[4] "All motions, demurrers, and special pleas shall be made and filed at or before time of arraignment. . . ."

[5] There is no question that Carswell was eligible for appointed counsel.