## A00A1503. HEMIDI v. THE STATE.
### (537 SE2d 804)

JOHNSON, Chief Judge.

A jury found Mohammed Hemidi guilty of armed robbery and possession of a firearm during the commission of a crime. Hemidi appeals, alleging (1) there was insufficient evidence to support his conviction, (2) a fatal variance existed between the evidence at trial and the indictment, (3) the trial court gave an improper jury charge in response to a jury question, and (4) the trial court improperly allowed his statement into evidence. Because we find that these contentions lack merit, we affirm.

1. Hemidi contends the state failed to prove he was guilty of the crimes beyond a reasonable doubt. We disagree. Pursuant to OCGA § 16-8-41 (a), an individual commits the offense of armed robbery when he, with intent to commit theft, takes property of another from the person or the immediate presence of another by use of an offensive weapon or any device having the appearance of such weapon. The offense of possession of a firearm during the commission of a felony is defined in OCGA § 16-11-106 (b) (1).

Viewed in a light most favorable to support the jury's verdict the evidence shows that a witness pumping gas at a gas station noticed a black car near the pay phones. After paying for his gas, the witness stopped to use the pay phones. He observed the black car move from the phone area and saw three men get out of the car and enter the store. After finishing his phone call, the witness drove by the front of the store and saw the three men inside the store. The clerk was on his knees, and the tallest of the three men had a gun to the clerk's head. The witness left the gas station and informed a police officer who was working off-duty as security for a nearby restaurant. The officer radioed a call to the police.

An officer responded to the call and saw Hemidi banging on the cash register with a gun. He also observed a dark-colored Ford Escort, with two men inside, come speeding out of the gas station with no headlights on and drive the wrong way down a one-way road. The officer radioed other officers about the fleeing car. He then observed Hemidi run to the back of the store. When Hemidi was later brought out of the store, the officer identified Hemidi as the man he observed banging on the cash register with a gun. He also identified Hemidi in court as the individual he saw with the gun.

Another officer saw the small black car exiting the gas station at

a high rate of speed. He pursued the car, which hit a curb and eventually stopped. Inside the car, officers found paper money, several rolls of pennies and some coin wrappers, toy trucks, cartons of cigarettes, and an empty rum bottle.

Two sergeants responded to the call and entered the store. They saw that the store was in disarray and heard a voice in the men's restroom. They found the store clerk in the restroom and brought him outside. They subsequently located Hemidi hiding in a stall in the outside restroom of the service station. Hemidi was standing on the toilet with a gun in his hand. At trial, one of the sergeants identified Hemidi as the individual they discovered hiding with the gun.

The store clerk testified that three men came into the store and the tallest one put a gun to his head. The gunman asked the clerk how to open the register and ordered him to get down on his knees. The other two men left the store, and the gunman ordered the clerk to go into the bathroom and count to 100. When the clerk reached 20, he heard someone say "police," and two officers took him outside. Later, the police brought Hemidi out of the restroom, and the store clerk identified him at the scene as the assailant. The men took cartons of cigarettes, toy trucks, and windshield washer fluid. At trial, the store clerk identified some rolls of coins and coin wrappers as being similar to ones taken from the gas station. He could not identify Hemidi as the gunman at trial but stated he was certain the man brought out of the store was the gunman.

A detective testified that he observed Hemidi after he was arrested. Although he smelled alcohol on Hemidi, he did not believe Hemidi was intoxicated. According to the detective, Hemidi's speech was not slurred, his eyes were not glassy, and he was able to walk normally. One of the sergeants and the store clerk both testified that they did not smell any alcohol on Hemidi.

At the police station, Hemidi waived his *Miranda* rights and gave a statement to another sergeant. This sergeant testified that he determined Hemidi was not under the influence of alcohol. In Hemidi's statement, which was read to the jury, he admitted committing the armed robbery and possessing the gun during the armed robbery. After reviewing his statement, Hemidi asked the sergeant to change the phrase "I didn't want to kill him" to "I didn't want to shoot him."

Although Hemidi points to conflicts in the store clerk's descriptions of Hemidi's clothing and physique, it is the jury's function, not the appellate court's, to resolve conflicts in the testimony and determine the credibility of the witnesses.[1] The evidence was sufficient to

---

[1] *Byrd v. State*, 236 Ga. App. 485, 486 (1) (512 SE2d 372) (1999).

authorize a rational trier of fact to find Hemidi guilty beyond a reasonable doubt of armed robbery and possession of a firearm during the commission of a crime.[2]

2. Hemidi contends a fatal variance existed between the evidence at trial and Count 2 of the indictment because the state failed to prove that he possessed a handgun. However, as discussed in Division 1, the state presented sufficient evidence to show that Hemidi possessed a handgun during the commission of the crime. The witness saw the tallest man holding a gun, and the store clerk identified Hemidi, the tallest man, as the one who pointed the gun at him. In addition, the officer who first responded to the scene observed Hemidi with a gun, and two sergeants discovered Hemidi hiding in the bathroom stall with a gun in his hand. There was no fatal variance between the indictment's allegation and the proof at trial.

3. Hemidi contends the trial court erred in its recharge to the jury in response to a question. The recharge, however, was a correct statement of the law and was relevant to the jury's question. Thus, the recharge was not erroneous.

After the jury had begun its deliberations, it sent a note asking, "When does a crime of armed robbery officially begin and end?" In response, the trial court conferred with counsel for both parties and charged the jury as follows:

> The force or intimidation must either precede or be contemporaneous with the taking to prove armed robbery. In order to be armed robbery, the offensive weapon, if any, must be used by the defendant or by another under circumstances where the defendant was a party to the crime, and that use must be concurrent with the forcible taking. As the fact finders, you will determine whether an armed robbery occurred, and, if so, when it began and ended, and whether the defendant was responsible. In doing so, you would consider all of the instructions I've given to you this afternoon.

The first sentence was requested by Hemidi's attorney, and when the trial court proposed the recharge, Hemidi's attorney, without waiving any reservations, stated that the charge was "in the right direction, certainly."

Clearly, when a jury requests a charge or recharge on a particular point, it is within the trial court's discretion to give or not give additional instructions.[3] Hemidi contends the recharge was error

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Byrd*, supra.

[3] See *Miner v. State*, 268 Ga. 67 (2) (485 SE2d 456) (1997); *Patterson v. State*, 264 Ga. 593, 594 (2) (449 SE2d 97) (1994).

because it emphasized parties to a crime. However, because the recharge was legally correct and supported by the evidence, we find no abuse of the trial court's discretion.[4]

4. Hemidi asserts the trial court erred in admitting into evidence his custodial statement because the evidence shows he was under the influence of alcohol when he gave the statement. We disagree. While one of the detectives did testify that he smelled alcohol on Hemidi, he further testified that he did not believe Hemidi was intoxicated. According to the detective, Hemidi's speech was not slurred, his eyes were not glassy, and he was able to walk normally. In addition, one of the sergeants who responded to the scene and the store clerk both testified that they did not smell any alcohol on Hemidi, and the sergeant who took Hemidi's statement testified that he determined Hemidi was not under the influence of alcohol. In fact, Hemidi's statement belies his claim that he did not know what was going on. He not only provided a detailed statement about what happened, but he corrected the statement to make it more accurate.

Following a *Jackson-Denno* hearing, the trial court determined, based on a consideration of the totality of the circumstances, that Hemidi's statement was freely and voluntarily given. This finding is supported by the evidence and is not clearly erroneous.[5]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED JULY 28, 2000.

*Michael S. Katz*, for appellant.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Kristin L. Wood, Assistant District Attorneys*, for appellee.

---

[4] *Miner*, supra; *Patterson*, supra.

[5] See *Christopher v. State*, 269 Ga. 382, 383 (2) (497 SE2d 803) (1998) (although there was an odor of alcohol, the defendant did not appear to be intoxicated and spoke coherently); *Willis v. State*, 263 Ga. 597, 599 (2) (436 SE2d 204) (1993) (although defendant had a blood alcohol content of 0.19 at the time she made the statement, defendant was coherent and did not appear to be under the influence to the extent that she could not comprehend her rights).