### A01A0241. MATHESON v. THE STATE.
(547 SE2d 774)

JOHNSON, Presiding Judge.

The trial court, sitting without a jury, found Tanina Matheson guilty of driving under the influence of alcohol to the extent it was less safe to drive and failing to maintain her vehicle within a single lane. The court found Matheson not guilty of reckless driving. She appeals, challenging the sufficiency of the evidence and raising two enumerations regarding her legal representation at trial. Because none of the arguments presents grounds for reversal, we affirm her convictions.

1. Matheson contends the evidence was insufficient to support the convictions. We disagree.

On appeal, we view the evidence in a light most favorable to the verdict.[1] So viewed, the evidence shows that at 2:00 a.m., a police officer noticed Matheson's car crossing back and forth over the highway's fog line. The officer activated his car's blue lights, and Matheson eventually stopped. When the officer approached the car, he detected a strong odor of alcohol emanating from inside the car. The officer asked Matheson if she had been drinking. She replied that she had something to drink earlier. The officer asked Matheson for her driver's license and proof of insurance. She produced her license, but could not find her insurance card. The officer told her to keep looking for it while he ran a check on her license and that, if she found the card, to hold it outside the window.

Matheson found the card, held it outside the window, then accidentally dropped it. As she got out of the car to retrieve the card, the officer asked her if she would perform field sobriety tests. Matheson refused. She wandered around and refused to comply with the officer's instructions to stay in one place. Her eyes were bloodshot and glassy, her speech was slurred, and she was uncooperative. According to the officer, who had effected over 100 DUI arrests in his career, Matheson exhibited the traits of someone who was intoxicated and possessed an impaired ability to drive. The officer read to

---

[1] *Tucker v. State*, 245 Ga. App. 551 (538 SE2d 458) (2000).

Matheson the implied consent notice, but she refused to submit to an alco-sensor test of her breath.

The officer placed Matheson under arrest and took her to the police station. While en route to the station, Matheson told the officer that she was under the influence of prescription medication, though she declined to elaborate. When they arrived at the station, the officer asked Matheson if she would submit to a chemical test of her breath. She refused to submit to this test as well.

At trial, Matheson testified that she had "one Jack Daniels and a Diet Coke" with dinner and, sometime later that night, drank two alcoholic drinks at a bar. She denied having told the officer that she had taken prescription drugs that evening.

Matheson's refusal to submit to an alco-sensor test and to a later chemical test of her breath is circumstantial evidence of her guilt.[2] In light of that evidence, the officer's testimony as to his observations, and Matheson's admission that she had consumed three alcoholic beverages that night, a rational trier of fact could have found her guilty beyond a reasonable doubt of driving under the influence of alcohol and failure to maintain lane.[3]

Contrary to Matheson's contention, the trial court was authorized to reject her testimony that she was not impaired, that she crossed the fog line only because the steering on her car was malfunctioning, and she was unaccustomed to driving this car. The trial court was also authorized to believe the officer's testimony that Matheson's eyes were glassy and bloodshot and that her speech was slurred, even if he did not include any such notations in his incident report, and to believe that Matheson was weaving and had the above-cited physical characteristics, even if, as she urges, the police car's videotape (which begins after the officer activated his car's blue lights) does not clearly corroborate his testimony.

In a bench trial, the trial court weighs the evidence and determines the credibility of witnesses.[4] It is the function of the finder of fact, not this Court, to resolve conflicts in the evidence and to determine the credibility of witnesses.[5] The evidence was sufficient to support the convictions.[6]

2. In two enumerations, Matheson asserts errors relating to the legal representation she received at trial. In the first enumeration,

---

[2] *Lucas v. State*, 234 Ga. App. 534, 535 (1) (507 SE2d 253) (1998).

[3] See *Davidson v. State*, 237 Ga. App. 580, 581 (1) (516 SE2d 90) (1999); *Martin v. State*, 216 Ga. App. 25 (453 SE2d 498) (1995).

[4] See *Martin*, supra at 26.

[5] *Hemidi v. State*, 245 Ga. App. 417, 418 (1) (537 SE2d 804) (2000).

[6] See *O'Brien v. State*, 242 Ga. App. 344, 345 (1) (529 SE2d 657) (2000); *Byrd v. State*, 240 Ga. App. 354 (523 SE2d 578) (1999); *Hamilton v. State*, 228 Ga. App. 285, 286 (3) (491 SE2d 485) (1997).

she urges that her waiver of the right to trial counsel was not knowingly and intelligently made. In the second, she contends that the attorney appointed to assist her on the day of trial was ineffective. Although we will consider the arguments separately, we will first set out the facts relevant to both issues.

Matheson was arrested in August 1999. She appeared in court in December 1999 and, at that time, signed a waiver of formal arraignment form which included a list of four notices, each of which had a heading in bold print. The second such notice stated:

> **Right to an Attorney** — The Defendant acknowledges that he or she has been notified by the Court of the right to be represented by an attorney. Certain Defendants who are unable to afford an attorney may qualify for a court appointed attorney and should immediately contact Pre-Trial services on the 2nd Floor of the Justice Center, Phone (770) 479-8970, to determine if they qualify for a court appointed attorney.

The waiver form she signed also contained a notice that Matheson's case was set for trial on February 23, 2000.

When the case was called for trial as scheduled, the trial court informed Matheson that it needed "to make certain that [she is] able to waive some rights here[,] such as the right to an attorney." The court informed Matheson that she was charged with a very serious offense, namely driving under the influence of alcohol, that the maximum punishment is a year in jail and a possible fine and penalty of $1,350. Matheson said she understood. When asked, Matheson told the court that she is 40 years old, completed part of college, and that she had a few courses in law. The court asked her if she thought she could represent herself without an attorney. Matheson replied that she could. The judge asked if she understood the advantages of having an attorney and the disadvantages of not having an attorney. Matheson responded that she did, but that she could not afford an attorney.

The trial court asked the prosecutor for Matheson's paperwork. The court then remarked, "Well ma'am, we advised you of the opportunity to be interviewed for appointed counsel. Did you go through the interview process?" Matheson: "No, sir, I didn't. I went and got the paperwork and I did get some of the requirements. I spoke to several attorneys and I got something to verify that I could not afford their fee and so I just decided to come here alone." The court reminded Matheson that she was informed of the interview process for obtaining appointed counsel in December and asked her if she called the phone number she was given regarding appointed counsel.

Matheson said she went to the office and talked to some attorneys about representation. The court told Matheson that it was very unusual for a defendant to go forward with as serious a charge as DUI without an attorney and asked her if she was certain she wanted to proceed without one. Matheson said, "Yes." The court asked if anyone had made any threats or promises to her to influence her decision to represent herself and if she understood the advantages and disadvantages of proceeding without an attorney. She answered negatively to the inquiry regarding threats or promises and affirmatively as to her understanding of the importance of counsel.

After explaining to Matheson the court's trial procedures, the trial court asked an attorney who was present in the courtroom if he would sit with Matheson and assist her at trial. The attorney agreed to do so, then conducted extensive direct and cross-examinations of each witness and made a closing statement on Matheson's behalf.

(a) *Did Matheson validly waive her right to counsel?* At the outset, we point out that this argument is, in a sense, moot because Matheson was in fact provided with trial counsel who conducted all phases of the trial except the opening argument.[7] This is not a case where a defendant stood trial alone with no assistance.[8] In an effort to protect Matheson's rights, the trial court enlisted for Matheson's benefit, on its own motion, the assistance of an attorney. Matheson voiced no concerns or objections to having the attorney's assistance.

In any event, Matheson's decision to proceed to trial on her own, before she retained or was given the assistance of an attorney, was knowingly and intelligently made. The determination of whether an accused has intelligently waived her right to counsel depends, in each case, upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.[9] No magic language is required, just a showing that the accused knew of her right to counsel and of the dangers of proceeding without counsel.[10]

It is clear from the record that Matheson was made aware of her right to counsel and the dangers of proceeding on her own. She had been informed that appointed counsel was available to defendants who were unable to pay, and she knew of the procedure for obtaining appointed counsel, but admitted that she did not complete the required process. In the trial court's opinion, Matheson did not make

---

[7] See *Young v. State*, 245 Ga. App. 799, 800 (538 SE2d 487) (2000) (physical precedent only).

[8] *Everman v. State*, 203 Ga. App. 350, 351 (1) (416 SE2d 861) (1992).

[9] *Gamble v. State*, 235 Ga. App. 777, 780 (4) (510 SE2d 69) (1998).

[10] See *Brown v. State*, 244 Ga. App. 206, 207 (1) (535 SE2d 281) (2000); *Gamble*, supra.

an effort to get an attorney. We note that she did not ask the trial court for a continuance to secure her own or appointed counsel. Matheson was responsible for her own predicament, and she cannot complain of a result her own conduct aided in causing.[11]

(b) *Did appointed counsel render effective assistance?* Matheson complains that the attorney who assisted her at trial was ineffective because he was inadequately prepared.

To prove ineffective assistance of trial counsel, Matheson is required to show that counsel's performance was deficient and that the deficiency prejudiced her.[12]

In assisting Matheson, the attorney requested and received a copy of the officer's incident report, objected to questions asked by the state during its examinations of the witnesses, cross-examined the state's only witness extensively, examined Matheson when she testified, and made a lengthy closing statement.

Our review of the record indicates that counsel's representation was not deficient and that Matheson was not prejudiced by any alleged deficiency, especially in light of the fact that she was acquitted on one of the three charges.[13]

Nonetheless, Matheson acquiesced to the representation provided by the trial court. With full knowledge of the circumstances surrounding the attorney's representation, including the shortness of time before trial, Matheson accepted the attorney's assistance and allowed the attorney to conduct the entire defense. She did not ask for a continuance so that the attorney could become better prepared. And, had she informed the trial court earlier of her lack of representation, assuming Matheson was entitled to appointed counsel, the trial court might have been able to appoint counsel sooner.[14] She cannot now complain of ineffective assistance of counsel for lack of preparation time when she had no right to appointed counsel, knowingly waived her right to representation, and then accepted the services of the lawyer with full knowledge of the circumstances.[15] Those cases relied upon by Matheson as requiring a contrary result are factually distinguishable.

This enumeration presents no grounds for reversal.

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

---

[11] See *Minor v. State*, 232 Ga. App. 246, 247 (2) (501 SE2d 576) (1998).
[12] See *Powell v. State*, 271 Ga. 575, 576 (3) (522 SE2d 656) (1999).
[13] See *Young*, supra.
[14] See *Watkins v. State*, 191 Ga. App. 87, 89 (1) (381 SE2d 45) (1989).
[15] See *Everman*, supra at 352 (1).

DECIDED APRIL 12, 2001.

*Cindi T. Yeager*, for appellant.

*G. Channing Ruskell, Solicitor-General, Anthony B. Williams, Assistant Solicitor-General*, for appellee.