**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 16, 2014**

# In the Court of Appeals of Georgia

A14A0885. NELSON v. THE STATE.

ELLINGTON, Presiding Judge.

Leonard Nelson entered a negotiated plea of guilty to violation of OCGA § 16-14-4 (a) of the Georgia Racketeer Influenced and Corrupt Organizations Act, see OCGA § 16-14-1 *et seq.* ("RICO"), and the trial court sentenced him to ten years probation. The trial court ordered as a condition of probation that Nelson pay a total of $725,000 in restitution to his victims. On appeal, Nelson contends that the trial court erred because he established by a preponderance of the evidence that he lacked the financial resources to pay restitution in the amount ordered. He also contends that the trial court erred in awarding restitution to the victim named in Counts 6 through 12 of the indictment because the trial court entered an order of nolle prosequi at the

state's request on those counts. We disagree and affirm for the reasons set forth below.

"Any dispute as to the proper amount or type of restitution shall be resolved by the ordering authority by the preponderance of the evidence." OCGA § 17-14-7 (b). On appeal, this Court reviews the record "to determine whether each party has met his or her specified burden and whether a restitution award was supported by the preponderance of the evidence." (Citation and punctuation omitted.) *In the Interest of E. W.*, 290 Ga. App. 95, 96 (2) (658 SE2d 854) (2008). "It is well established that review of evidence by this Court is limited to questions of sufficiency." (Citation and punctuation omitted.) *Tindol v. State*, 284 Ga. App. 45, 48 (4) (643 SE2d 329) (2007).

1. The evidence adduced at the restitution hearing showed that Nelson was a real estate investor who borrowed money from individuals, often from their retirement accounts, to pursue various real estate deals. Nelson admitted that he stole money from his investors. Numerous victims testified at the restitution hearing and established the amounts they had tendered to Nelson through their testimony and through promissory notes and other instruments Nelson signed. Following the presentation of evidence, the trial court found that Nelson "had a plan, he had a purpose. He took from all these people. He had no intention of paying them back."

The trial court thereafter ordered that Nelson pay restitution to 22 victims in the total amount of $725,000, and that as a condition of probation Nelson make monthly payments towards that amount at $6,041.66 a month beginning on September 1, 2013. The total amount of restitution was inclusive of $230,000 to which Nelson had previously stipulated as "partial restitution." The stipulation also provided that "further restitution may be ordered after a Restitution hearing." Nelson does not contest that he had financial resources to repay the $230,000. Nelson maintains, however, that he established by the preponderance of the evidence that he lacked the financial resources with which to pay more than the stipulated amount of restitution, and that the trial court erred in finding otherwise. We disagree.

Subject to the provisions of OCGA § 17-14-10, the trial court "shall, in sentencing an offender, make a finding as to the amount of restitution due any victim, and order an offender to make full restitution to such victim." OCGA § 17-14-3 (a). In turn, OCGA § 17-14-10 sets forth a list of factors which the trial court shall consider in determining the nature and amount of restitution. These include "[t]he financial resources and other assets of the offender or person ordered to pay restitution . . . .," "[t]he earnings and other income of the offender or person ordered to pay restitution," and "[a]ny financial obligations of the offender or person ordered

3

to pay restitution, including obligations to dependents." OCGA § 17-14-10 (a) (1), (2), (3). The factors also include, however, the amount of damages, and the goal of restitution to the victim and rehabilitation of the offender. OCGA § 17-14-10 (4), (5).

The state had the burden of demonstrating the amount of the victims' losses. OCGA § 17-14-7 (b). Nelson, however had the burden of demonstrating his financial resources and the financial needs of his dependents. See id. Nelson testified at the restitution hearing that he had no assets of any value. According to Nelson, he was "80 percent disabled," lived with his mother, and was unemployed. He testified that he received net disability benefits of $1,901 a month from the Department of Veterans Affairs (the "VA"),[1] and that he paid monthly child support to his two youngest children in the amount of $725. Nelson was employed in law enforcement until 2006, when he left the field to pursue real estate.

Notwithstanding Nelson's testimony, in its written order the trial court stated that it had expressly considered Nelson's present financial condition, his probable future earnings capacity, and his obligations, and it determined that restitution could

---

[1] An additional $125 was sent by the VA directly to each of his two oldest children each month.

be made by Nelson in the amount ordered.[2] The trial court found, among other things, that Nelson had the present condition to be gainfully employed notwithstanding his claim to be 80 percent disabled. Notably, Nelson's testimony at the restitution hearing showed that he had worked in real estate during the period he claimed to be disabled.[3] Further, although Nelson testified that he was without any assets, he had previously been in possession of hundreds of thousands of dollars of the victims' money. Some of the victims' money was used by Nelson for purposes of a "timber deal" in Mississippi and Louisiana. According to Nelson, he had a lawsuit pending against his former partner in the venture and "the timber has not been cut. So there is money still there." He also testified that his "part of that deal" was worth $4.8 million and that any recovery would constitute an asset available to pay restitution.

---

[2] The trial court was not required to make written findings of fact concerning its consideration of the factors set forth in OCGA § 17-14-10, although it did so here. See *Futch v. State*, 314 Ga. App. 294, 298 (3) (a) (723 SE2d 714) (2012) (finding that "based on an amendment to the restitution statutes in 2005, a trial court is no longer required to make written findings of fact concerning the factors to be considered in determining the restitution amount, as set forth in OCGA § 17-14-10.") (citation omitted).

[3] Nelson also submitted correspondence from the VA to show the amount of his disability payments. The VA's letter, however, did not expressly reference disability.

In addition, following the presentation of evidence the trial court found that the state had carried its burden, but that as to Nelson's contention that he was not able to pay, the judge stated, "I don't believe him." As the finder of fact, the trial court was not required to find Nelson's testimony credible, or to conclude, given the lack of that credibility, that Nelson had carried his burden of demonstrating his financial resources. See generally *Lawton v. State*, 285 Ga. App. 45, 47 (645 SE2d 571) (2007) (noting that "the trial court, which sat as the finder of fact for purposes of the . . . hearing, was entitled to disbelieve" the defendant); *Matheson v. State*, 249 Ga. App. 200, 201 (1) (547 SE2d 774) (2001) ("In a bench trial, the trial court weighs the evidence and determines the credibility of witnesses."). See also OCGA § 17-14-7 (b) (disputes as to the amount of restitution shall be resolved by the ordering authority). Nor does Nelson point to any authority "for the proposition that the court must determine in advance that the defendant's net worth or financial resources projected over the intended years of repayment is mathematically sufficient to allow full payment of the amount of restitution ordered." *McMahon v. State*, 284 Ga. App. 192, 194 (2) (643 SE2d 236) (2007). Rather, the record shows that the trial court, upon consideration of the factors laid out in OCGA § 17-14-10 (a), "based its restitution award on competent evidence proving the amount granted by a preponderance of that

6

evidence." *Graf v. State*, 327 Ga. App. 598, 604 (760 SE2d 613) (2014). We find no error.

2. Nelson also contends that the trial court erred in ordering him to award restitution to Jay Cropper, the victim listed in Counts 6 though 12 of the Indictment, because the trial court entered an order of nolle prosequi on those counts. We disagree. "Because the trial court's ruling on a legal question is not due any deference, we apply the 'plain legal error' standard of review." (Punctuation and footnote omitted.) *Simmons v. State*, 315 Ga. App. 82, 83 (1) (726 SE2d 573) (2012).

Counts 6 through 12 of the Indictment alleged that Nelson committed theft by taking funds from Cropper on seven different occasions between July 1, 2007 and February 28, 2008. "The acts set forth" in Counts 6 through 12,[4] among others, were alleged to be predicate acts to the RICO violation and part of the racketeering activity, and were expressly incorporated into Count 13. Nelson pled guilty to Count 13 of the indictment, which charged that he violated OCGA § 16-14-4 (a) of RICO in that he unlawfully, through a pattern of racketeering activity, or proceeds derived therefrom, acquired an interest in or control of property, including money, between

---

[4] The acts involved the tender by Cropper to Nelson of various amounts of money for investment in properties in Georgia and Mississippi, which money Nelson then allegedly kept for his personal use.

7

January 1, 2007 and December 31, 2008. The trial court agreed to enter nolle prosequi on Counts 6 through 12 because Nelson pled guilty to Count 13.

Cropper testified at the restitution hearing concerning the predicate acts which were incorporated into Count 13. The trial court named Cropper as one of Nelson's victims in its restitution order because Cropper was a victim. Consistently with the evidence of the actual losses incurred by Cropper, the trial court required Nelson to make restitution to Cropper in the amount of $193,000.

It is true, as Nelson points out, that "a defendant cannot be ordered to pay restitution for a count on which he was acquitted or not charged," including counts that have been nolle prossed. (Punctuation and footnote omitted.) *Wilder v. State*, 314 Ga. App. 905, 906 (726 SE2d 154) (2012) (vacating and remanding order for a determination of whether the amount of restitution was improperly based on nolle prossed charges). Accordingly, we agree with Nelson that he could not be ordered to pay restitution for Counts 6 through 12, as those accounts were nolle prossed. Nevertheless, Nelson pled guilty and was sentenced for violating OCGA § 16-14-4 (a) of RICO under Count 13 of the indictment. And it was on account of that crime that the trial court ordered restitution to the victims, including Cropper. Accordingly, we find no error.

8

*Judgment affirmed. Phipps, C. J., and McMillian, J., concur.*