## A99A1269. McDOWELL v. THE STATE.
### (522 SE2d 44)

Smith, Judge.

Robert Lee McDowell was indicted by a Tattnall County grand jury on one count of aggravated assault and one count of aggravated assault upon a correctional officer. A jury found him guilty of aggravated assault on Count 1 and guilty of the lesser included offense of aggravated assault on Count 2. McDowell's trial counsel did not timely file an appeal, and the trial court granted McDowell's pro se motion to file an out-of-time appeal and appointed new counsel to represent him.

The indictment charged that McDowell, an inmate at Georgia State Prison at Reidsville, assaulted a special education teacher at the prison and a laundry supervisor, who also held the title of correctional officer, with gasoline and a lighter. The evidence presented at trial showed that McDowell had a history of mental retardation and the teacher had counseled him when she was the mental retardation specialist at the prison. The teacher testified that McDowell asked several times if she would meet with him for a few moments to discuss some personal problems, and she finally agreed. McDowell was working in the laundry, and the teacher came to meet him there. When the rest of the prisoners left, the laundry supervisor indicated that the teacher and McDowell could talk in the laundry office, a glass-enclosed room that was air conditioned.

The teacher testified that although the meeting was pleasant initially, McDowell soon became angry. He took a lotion bottle out of his pocket, told her it was not lotion, squeezed the bottle, and told her to do what he said or he would burn her. He sprayed the liquid around her chair and took a disposable lighter from his pocket and lit it, again threatening to burn her. When McDowell lit the lighter, the teacher became frightened that the gasoline would ignite, and she ran. The laundry supervisor, who had remained outside the office, noticed McDowell start toward the teacher and came into the office. As he entered the office, McDowell warned him: "I've got gas, get away from me, I'll burn you up." McDowell sprayed gasoline from the plastic bottle in the supervisor's face and on his clothes while holding the lighter in his other hand. McDowell then hit the supervisor on

the side of the face, knocking off his glasses.

As this happened, the teacher was able to reach the other door to the office. The laundry supervisor testified that at this point, McDowell began mumbling "[t]hey're gonna kill me" and "I'm gonna kill you." The supervisor placed himself between McDowell and the teacher and passed her the key to the door, allowing her to unlock the door and get out. The teacher, soaked with gas, fell, and McDowell again struck the supervisor and began running. A maintenance worker had called for help, and McDowell reentered the laundry. He was still muttering "[t]hey're gonna kill me" when he was subdued by other correctional officers.

1. Counsel was appointed to represent McDowell. On the day of trial, his appointed counsel informed the court that McDowell wished to represent himself. A hearing was conducted to ensure that McDowell was waiving his right to counsel knowingly and voluntarily. The trial court then allowed McDowell to proceed pro se, instructing appointed trial counsel to remain present in an advisory capacity. At the end of the State's case-in-chief, McDowell appeared to elect to have his standby counsel proceed in representing him for the remainder of the trial. McDowell testified, and his appointed counsel questioned him. McDowell elected to have appointed counsel make the closing argument.

On appeal, McDowell contends the trial court erred in allowing him to proceed pro se. We do not agree.

> In *Clarke v. Zant*, 247 Ga. 194[, 196] (275 SE2d 49) (1981), we discussed the dilemma faced by a trial judge when a criminal defendant refuses representation by appointed counsel and announces his desire to represent himself. In doing so, we recognized the right of self representation as pronounced in *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975). We also found that a defendant cannot exercise this right unless it is shown that he has adequately waived his right to counsel. This led us to the holding that in future cases the record should reflect a finding of the trial court that the defendant has validly chosen to proceed pro se and that this choice was made after the defendant was made aware of his right to counsel and the dangers of proceeding without counsel.

(Citations and punctuation omitted.) *Wayne v. State*, 269 Ga. 36, 37-38 (2) (495 SE2d 34) (1998). But although a high burden is placed on the trial court, a defendant still retains the right to waive representation by counsel. He may not, however,

play one right against another with the hope of creating error. Neither may a defendant who has knowingly waived counsel then complain of a lack of counsel when he determines that the judge's warnings were valid. Under such circumstances, the defendant's problems are of his own making, and he is bound by his poor choices.

*Reviere v. State*, 231 Ga. App. 329, 331 (498 SE2d 332) (1998). To be valid, the waiver

must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the matter.

(Citations and punctuation omitted.) *Kirkland v. State*, 202 Ga. App. 356, 357-358 (414 SE2d 502) (1991). No "magic language" need be employed, *Reviere*, supra at 330, and the trial court need not ask any particular questions. "The record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver. [Cits.]" *Wayne*, supra at 38 (2).

The record so reflects in this case. The trial court advised McDowell of his right to testify and the difficulty of doing so without an attorney to question him. He was informed of the nature of the charges against him and the range of punishments that might be imposed upon conviction. He was cautioned regarding the likelihood of success, or lack thereof, if he proceeded pro se. He was reminded of attorneys' special training in court procedure and in presenting favorable evidence. The trial court even permitted the district attorney to question McDowell regarding his understanding of the right to counsel he wished to relinquish and whether he was doing so voluntarily. In addition, the trial court protected McDowell further by directing appointed counsel to remain and to represent McDowell on a standby basis. McDowell stated he understood the consequences and repeatedly stated his desire to represent himself. Moreover, McDowell took advantage of standby counsel, both when he testified in his own defense and by electing to have counsel make closing argument. Contrary to McDowell's argument, the record indicates that the necessary requirements were satisfied. *Shavers v. State*, 179 Ga. App. 45, 46 (1) (345 SE2d 134) (1986).

McDowell argues specifically that because his history of mental retardation was not mentioned until well into the presentation of evi-

dence at trial, the trial court could not have taken this factor into consideration in determining that he knowingly and intelligently waived his right to counsel. He also notes that appointed trial counsel observed McDowell taking medication. But the record reflects that whatever developmental problems existed, they did not prevent McDowell from questioning the State's witnesses cogently. And McDowell indicated to the trial court that he took medication regularly both for high blood pressure and for pain. No indication exists in the record that this medication altered his mental state, judging from both his conduct at trial and the jury's deliberations and questions, leading to conviction of a lesser included offense on Count 2.

Finally, in light of the overwhelming evidence of McDowell's guilt, including the direct testimony of the victims, even if error existed in allowing him to represent himself, it did not contribute to the jury's verdict and was therefore harmless. *Reviere*, supra at 331.

2. McDowell also maintains that the evidence presented at trial was insufficient to support his conviction for aggravated assault upon the teacher. He argues that because the laundry supervisor testified he never saw McDowell use the gasoline and lighter in any way against the teacher and McDowell testified he did not do so, no corroboration exists for the teacher's testimony that McDowell assaulted her with the gasoline.

No corroboration was required.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. Conflicts in the testimony of the witnesses, including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489) (1997). Although in conflict with McDowell's testimony, the testimony of the victim alone was therefore sufficient to support McDowell's conviction.

*Judgment affirmed. Pope, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 18, 1999.

*Hal T. Peel*, for appellant.
*J. Thomas Durden, Jr., District Attorney, Timothy B. Lumpkin, Assistant District Attorney*, for appellee.