## A04A0928. BUSH v. THE STATE.

(601 SE2d 511)

BLACKBURN, Presiding Judge.

Following a jury trial, Keith Marlon Bush was convicted on two counts of aggravated assault[1] and on one count of cruelty to children in the second degree.[2] He appeals, challenging the sufficiency of the evidence on the aggravated assault counts and arguing that the court failed to give him sufficient information and warnings before allowing him to proceed pro se. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the record shows that a police officer witnessed Bush driving a car that Bush had stopped on the highway in front of a second car driven by Bush's wife and occupied by Bush's six-year-old child as a passenger. As the second car was going around Bush's car to the left, Bush accelerated and turned his vehicle into the second car, striking that car on the front passenger door near the child. The officer testified that it was blatantly obvious that Bush intentionally struck the second car. Both cars suffered damage from the collision.

The second car continued down the road, with Bush in pursuit and with the officer making a U-turn to follow. Bush passed the second vehicle and maneuvered his car in front of it, trying to slow down and block the second vehicle from proceeding. The officer succeeded in getting both cars to stop, and the wife immediately told the officer she was on the cell phone trying to get police. Both the wife and the child were visibly upset. The wife told police that Bush had thrown her and the child out of the family home, then pursued them in his vehicle, trying at times to run them off the road or to stop them, and succeeding in striking their vehicle.

Bush was charged with two counts of aggravated assault (use of his car as a deadly weapon against his wife and child), one count of cruelty to children in the second degree, and one count of aggressive

[1] OCGA § 16-5-21 (a) (2).
[2] OCGA § 16-5-70 (c).

driving. He insisted on proceeding pro se, despite numerous dire warnings from the court. At trial, he presented evidence (through him and his wife) that he was simply trying to get his wallet back from his wife and that the collision was accidental and of no consequence. The jury found him guilty on all counts, and after merging the aggressive driving count into the aggravated assault counts, the court sentenced him on the aggravated assault and child cruelty counts only. He moved for a new trial, challenging the sufficiency of the evidence and claiming he did not knowingly and intelligently waive his right to counsel. The court denied his motion, and this appeal followed.

1. Bush contends that the evidence was insufficient to support his aggravated assault convictions.

> The standard of review for the sufficiency of evidence, in reviewing either a motion for a directed verdict or a motion for new trial, is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. We view the evidence in the light most favorable to the verdict, and defendants no longer enjoy the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3] Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

*Sutton v. State.*[4]

Bush contends that because he and his wife testified that the collision was accidental and caused only slight damage, no evidence supported the aggravated assault convictions. This argument ignores the officer's eyewitness testimony that the collision was blatantly intentional and greatly upset the wife and child. The jury was authorized to discount Bush's evidence and to find that the collision was intentional. See *Frayall v. State*;[5] *Durrance v. State*.[6] Because a jury may find a vehicle to be a deadly weapon (depending on the manner and means by which it is used), sufficient evidence sustained the aggravated assault convictions. *Frayall*, supra at 287 (1); *Durrance*, supra at 186-187 (2).

---

[3] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[4] *Sutton v. State*, 261 Ga. App. 860 (1) (583 SE2d 897) (2003).
[5] *Frayall v. State*, 259 Ga. App. 286, 287-288 (1) (576 SE2d 654) (2003).
[6] *Durrance v. State*, 250 Ga. App. 185, 186-187 (2) (549 SE2d 406) (2001).

2. Bush contends that the court erred in finding that he knowingly and intelligently waived his right to counsel. He claims that the court gave him insufficient warnings about the dangers of proceeding pro se.

"The determination of whether a defendant has intelligently waived his constitutional right to counsel depends upon the particular facts and circumstances surrounding each case." *Smiley v. State*.[7] Generally, to validly waive the right to counsel, the defendant should apprehend "(1) the nature of the charges against him, (2) any statutory lesser included offenses, (3) the range of possible punishments for the charges, (4) possible defenses, (5) mitigating circumstances, and (6) any other facts necessary for a broad understanding of the matter." *McAdams v. State*.[8] See *Banks v. State*.[9] Pre-trial waiver forms should similarly outline pertinent dangers,

> such as (1) the possibility of a jail sentence; (2) the rules of evidence will be enforced; (3) strategic decisions with regard to voir dire and the striking of jurors must be made by defendant; (4) strategic decisions as to the calling of witnesses and/or the right to testify must be made by defendant; and (5) issues must be properly preserved and transcribed in order to raise them on appeal.

*McAdams*, supra at 252 (1).

Nevertheless, the Supreme Court of Georgia has emphasized that "it is not incumbent upon the trial court to make each of these inquiries." *Jones v. State*.[10] See *Hightower v. State*[11] ("[c]ontrary to the implication in some appellate decisions, the warnings required to meet constitutional muster need not take any rigid form, and specific questions need not be asked on the record"). Rather, "[t]he record need only reflect that the accused was made aware of the dangers of self-representation and nevertheless made a knowing and intelligent waiver." (Punctuation omitted.) *Jones*, supra at 886 (2). See *Tucci v. State*.[12]

The trial court here went to extraordinary lengths to ensure that Bush made a knowing and intelligent waiver. First, Bush signed a detailed waiver-of-counsel form, on which he initialed each of the following paragraphs:

---

[7] *Smiley v. State*, 252 Ga. App. 235, 236 (2) (555 SE2d 887) (2001).

[8] *McAdams v. State*, 258 Ga. App. 250, 251 (1) (573 SE2d 501) (2002).

[9] *Banks v. State*, 260 Ga. App. 515, 519 (2) (580 SE2d 308) (2003).

[10] *Jones v. State*, 272 Ga. 884, 886 (2) (536 SE2d 511) (2000).

[11] *Hightower v. State*, 252 Ga. App. 811 (557 SE2d 434) (2001).

[12] *Tucci v. State*, 255 Ga. App. 474, 475-476 (1) (565 SE2d 831) (2002).

I have read or had read to me the indictment or accusation charging me in this case and understand the nature of the charges as well as the maximum and minimum punishment provided by law. I understand that I have a right to be represented by an attorney at all critical stages of the criminal process, which includes this Arraignment. I understand my right to a court-appointed attorney if I cannot afford to hire an attorney on my own.

I have been informed of the benefits of a lawyer, such as filing motions to protect my rights which must be filed at this Arraignment [or] I may [lose] my right to later present those defenses, a lawyer's ability to explain the law and procedure, to investigate my case, to negotiate with the prosecutor, cross-examine witnesses, present evidence and select a jury if I go to trial. I have been warned about the dangers of proceeding[ ] without legal representation and that by doing so I may be waiving defenses, circumstances in mitigation and possible continuances to allow me the opportunity to hire or be appointed an attorney.

I have been formally educated through the 12th grade and I understand and can read and write the English language. . . .

I freely and voluntarily waive my right to counsel and knowingly represent myself.

The trial court also spoke with Bush on three separate occasions to warn him of the dangers of proceeding without counsel, to ensure he understood such dangers, and to plead with him to accept counsel. The first time was at arraignment, where Bush initially announced his desire to represent himself. After Bush acknowledged that he might seek first offender treatment in a possible plea bargain, the court advised him that he should be represented by counsel. The court inquired into Bush's education, learning of his high school diploma and of his further education to become a licensed cosmetologist. The court reviewed with Bush the nature of the charges and the range of punishments. The court detailed the role of the lawyer in a trial (explaining that Bush would have to do such on his own if no counsel were retained or appointed), including investigating the case, subpoenaing witnesses, giving an opening statement, calling witnesses, cross-examining witnesses, submitting written jury charges, and filing an appeal within 30 days. The court discussed with Bush his unfamiliarity with the rules of evidence, which unfamiliarity may

well preclude Bush from introducing the evidence needed to establish his defense. The court tried to talk him out of representing himself, pointing out that such was not in his interest nor in the interests of justice and referring to a study that showed that pro se parties were more likely to go to prison. Bush nonetheless insisted on representing himself.

The court tried again to persuade Bush to accept legal counsel, explaining (i) the danger of not being advised by an attorney of defenses or evidence that would excuse or reduce the crimes or reduce the punishment, (ii) his right to a court-appointed attorney free of charge, and (iii) the immediate deadline for filing motions, demands, and demurrers. Bush again waived his right to counsel. The court determined that this waiver was valid, specifically finding that Bush was aware of his right to counsel and of the dangers of proceeding pro se.

When the case was called for trial, the court on this second occasion again advised Bush to accept an attorney, reminding him of the perils of proceeding pro se. The court reiterated to him the value and role of a lawyer. Despite repeated court attempts to dissuade Bush and an offer to continue the case to allow counsel to prepare the case, Bush insisted on representing himself.

At the beginning of trial, the court on this third occasion again reminded Bush of the dangers of proceeding pro se, but to no avail. The court offered to appoint standby counsel to assist him, which offer Bush initially accepted. But when the court experienced some delay in locating counsel in the immediate vicinity, Bush impatiently stated he would waive any right to such as he desired for the case to proceed. The court acquiesced in this request.

Despite these extraordinary efforts by the court to persuade Bush to accept counsel, Bush myopically claims that the trial court in its lengthy discourses overlooked two items of information: the listing of lesser-included offenses and the need to preserve issues for appeal. Accordingly, he argues his waiver of counsel was not knowing, voluntary, and intelligent. This argument ignores the repeated emphasis that "[n]o magic language must be used by a trial judge in making the defendant aware of his right to counsel and of the dangers of proceeding without counsel." *Smiley*, supra at 236 (2). See *Gamble v. State*;[13] *Reviere v. State*.[14] As stated earlier, "the trial court does not have to ask any particular questions." *Tucci*, supra at 475 (1). See *Godlewski v. State*.[15] Rather, each case depends on its own facts and

---

[13] *Gamble v. State*, 235 Ga. App. 777, 782 (4) (510 SE2d 69) (1998).

[14] *Reviere v. State*, 231 Ga. App. 329, 330 (1) (498 SE2d 332) (1998).

[15] *Godlewski v. State*, 256 Ga. App. 35, 36 (567 SE2d 704) (2002).

circumstances. *Reviere*, supra at 330 (1). The record need only reflect that, aware of the dangers of self-representation, the accused nevertheless made a knowing and intelligent waiver. *Tucci*, supra at 475-476 (1). Accordingly, we have repeatedly affirmed trial court findings of valid waivers where the trial court's various warnings to the defendant did not happen to include specific statements concerning lesser-included offenses or preserving issues for appeal. See, e.g., *Brown v. State*;[16] *Smiley*, supra at 236-237 (2); *McDowell v. State*;[17] *Gamble*, supra at 781-782 (4).

We hold that the trial court's extraordinary and strenuous efforts here more than sufficed to adequately inform Bush of the dangers of proceeding pro se. We affirm the court's finding that his waiver of counsel was knowing, voluntary, and intelligent.

3. Bush complains that the court deprived him of his right to standby counsel when it experienced difficulties in immediately locating such counsel to accommodate Bush's acceptance of the court's last-minute offer. Setting aside all other defects in this argument, we hold that a defendant has no right to standby counsel and therefore has no room to complain when the court does not provide him such. *Washington v. State*.[18] See *Reviere*, supra at 332 (2).

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED JUNE 29, 2004.

*Michele B. Lord*, for appellant.

*William T. McBroom III, District Attorney, Daniel A. Hiatt, Assistant District Attorney*, for appellee.

---

[16] *Brown v. State*, 256 Ga. App. 603, 604-605 (1) (a) (568 SE2d 727) (2002).
[17] *McDowell v. State*, 239 Ga. App. 667, 669 (1) (522 SE2d 44) (1999).
[18] *Washington v. State*, 255 Ga. App. 623, 624 (3) (566 SE2d 386) (2002).