[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12476
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-01834-RWS

JOHN DANIEL BLUE,

Plaintiff - Appellant,

versus

MARIA DEGUADALUPE LOPEZ,
a DFACS caseworker, in her individual capacity,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 8, 2020)

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

John Blue appeals the district court's grant of summary judgment on his 42 U.S.C. § 1983 malicious-prosecution claim against Maria Lopez, a caseworker with the Georgia Division of Family and Children Services ("DFCS").  Blue alleged that Lopez caused his arrest and prosecution for aggravated assault with a vehicle by knowingly providing false information to law enforcement.  The court concluded that Lopez did not cause Blue's arrest and that Blue had not established a constitutional violation.  After careful review, we affirm the grant of summary judgment.

## I.

## A.

On the morning of June 12, 2014, Lopez went to a residence to investigate a complaint of domestic violence.  After Lopez parked, she went to the front door, and Zstanya Patrick answered.  Lopez and Patrick spoke outside the residence.  Patrick admitted that domestic violence had occurred in the home.  Patrick said that she and Blue, who lived with Patrick and their two sons (ages 14 and 10), did not get along, and she described a recent incident where Blue had hit one of the children, causing the child to complain of ringing in his ear.  Patrick explained that she planned to separate from Blue and move with her sons to Ohio, but she had not made any specific plans about a timeframe for moving.

While the two women spoke, Blue arrived at the apartment and went inside without addressing them. Once inside, he found his sons and told them to get dressed while he went out. Blue then left the apartment.

Blue testified that he did not know of Lopez's official capacity at that time. Instead, he believed that Lopez, whom he later described as appearing disheveled, was a "drug addict" friend of Patrick's. He based his belief on what he described as Lopez's flushed face and on his alleged observation of an IV dangling from her arm. Lopez was using an IV catheter on her arm because of a medical condition.

Lopez became concerned about Patrick's lack of a specific plan to remove the two children from the alleged domestic violence occurring in the home. She returned to her car and called her supervisor, who instructed Lopez to contact the Juvenile Court so she could take further action. Lopez did so, receiving authorization from a judge to take Blue's sons into custody on behalf of DFCS. The Juvenile Court emailed Lopez copies of the Authorizations for Protective Custody.

Meanwhile, Blue returned to the apartment, waited for the children to get dressed, and then left the apartment with the children. Blue and his sons emerged from the apartment while Lopez was in her car. The three entered Blue's van, which was parked head-in in the parking space directly across from and in front of Lopez's car, which was backed in and therefore facing the back of Blue's van. An eight-to-ten-foot-wide lane of travel separated the two vehicles. Seeing Blue and his sons

3

about to leave, Lopez approached the van, beat on the driver's side window, and told him he could not leave with the children. Blue said, "No," and began backing out.

What happened next is hotly disputed. According to Blue, as he was backing out, Lopez ran to her car and deliberately drove it into the back of Blue's van. Blue claimed that after the two cars collided, he got out of his van and asked Lopez to move her vehicle, but she did not respond. At the time, Blue said, he thought Lopez looked "high" and "crazy as heck," and his only interest was getting his children away from Lopez. So, when Lopez refused to move her car, Blue returned to his van and began driving it backward and forward multiple times until he was able to leave the parking space. Blue testified at his deposition that he succeeded in leaving without hitting Lopez's car.

Lopez had a different take on the incident. She claimed that it was Blue who struck her vehicle: Lopez asserted that she pulled her car up behind the van to prevent Blue from leaving with the children, but she did not strike his van. Rather, after she got close and had already stopped moving, Blue then backed into her. She said that Blue rammed her car with his van several times until he had successfully pushed her car out of the way and was able to maneuver the van out of the parking space. After Blue left the apartment complex with his children, Lopez called 911 to report the incident, prompting police to arrive on the scene and speak with Lopez.

4

Lopez later went to the Duluth Police Department to give a statement.  In her statement, Lopez reported that Blue rammed her car as he was leaving the parking lot.  As Lopez described the incident, Blue "continued backing into her vehicle until he had created a space where he could flee with his vehicle and both juveniles." Lopez advised the officer that Blue was very angry and belligerent and that she feared for the safety of both herself and the juveniles.  The officers who spoke to Lopez asked if she wanted to press charges against Blue.  Lopez called her supervisor at DFCS, who told Lopez to press charges.

Based on Lopez's statements, an officer obtained arrest warrants for one count of aggravated assault and two counts of child-custody interference.  In addition, a statewide alert was issued for the children.  Later, two additional arrest warrants were issued for reckless conduct.

At some point, Blue saw the police alert on television and, after asking his parents to pick up the children, turned himself in.  Blue spoke with the lead investigator at the Duluth Police Department.  Blue told the investigator that, as he was backing up, Lopez drove her car into the back of his van.  Following the initial impact, Blue said he put the van in reverse, "hit the gas, pushed her out of the way, and took off."  He told the detective that if he hit Lopez's car with his van, it was because he was trying to get out of the parking space.

Ultimately, an indictment was returned against Blue on a single charge of aggravated assault, in violation of O.C.G.A. § 16-5-21(a)(2). He spent approximately seven months in jail, before a state jury acquitted him. During the trial, the state court denied Blue's motion for a directed verdict.

**B.**

Following his acquittal, Blue filed a lawsuit against Lopez asserting, among other things, a malicious-prosecution claim under 42 U.S.C. § 1983. The district court originally granted summary judgment to Lopez based on the "*Monroe* Rule." *See Monroe v. Sigler*, 353 S.E.2d 23 (Ga. 1987). In *Monroe*, the Georgia Supreme Court held that a trial court's denial of a motion for directed verdict in an earlier criminal case served as a binding determination of the existence of probable cause in a later civil action for malicious prosecution. *Id.* at 25. We vacated the district court's ruling on appeal, holding that the *Monroe* rule did not apply to claims under § 1983. *See Blue v. Lopez*, 901 F.3d 1352, 1358–60 (11th Cir. 2018). We remanded for the district court to apply the ordinary federal standard for determining whether summary judgment should be granted. *Id.* at 1360.

On remand, the district court again granted summary judgment to Lopez, this time under the ordinary federal standard. The court concluded that Blue had not proven that law enforcement relied on Lopez's statements or actions when deciding

6

to pursue the aggravated-assault charge against Blue and that Blue had not established a violation of his Fourth Amendment rights.  Blue now appeals.

## II.

We review *de novo* the grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the nonmoving party—here, Blue. *Moore v. Pederson*, 806 F.3d 1036, 1041 (11th Cir. 2015).  Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Summary judgment is improper, however, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quotation marks omitted).  We may affirm the grant of summary judgment on any reasonable ground supported by the record, even if the district court did not rely on that ground.  *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251–52 (11th Cir. 2013).

## III.

We have identified "malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003).  A § 1983 malicious-prosecution claim requires proof of (1) the elements of the common-law tort of malicious prosecution and (2) a violation of the plaintiff's Fourth Amendment right against unreasonable

seizures. *Blue*, 901 F.3d at 1357. The common-law elements of malicious prosecution are (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff's favor; and (4) caused damage to the plaintiff. *Id.*; *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008).

An arrest without probable cause is an unreasonable seizure that violates the Fourth Amendment. *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). Probable cause exists when the facts and circumstances, of which the official has reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed, is committing, or is about to commit an offense. *Jordan v. Mosley*, 487 F.3d 1350, 1355 (11th Cir. 2007).

## A.

The parties first dispute whether Lopez caused the prosecution against Blue. In approaching this issue, we begin with the obvious fact that Lopez is not a police officer and did not arrest Blue. Rather, she claimed to be a victim who opted to press charges. The parties do not identify any § 1983 case, rather than state law, holding that allegedly false statements by a complaining witness can ground a § 1983 malicious-prosecution claim. *See Blue*, 901 F.3d at 1358 ("Federal law, not state law, governs the resolution of § 1983 claims."); *cf. Willis v. Brassell*, 469 S.E.2d 733, 737 (Ga. Ct. App. 1996) (stating that, under Georgia law, "[a] person may be

liable where he gave information [to the investigating officer] which he knew to be false and so unduly influenced the authorities"). Based on similar considerations, the district court observed that Lopez was an "improper defendant."

Nevertheless, Lopez does not dispute that she was acting under color of law, rather than as a private citizen, in reporting Blue to the police, and therefore was generally subject to suit under § 1983. *See Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013). And we have not limited malicious-prosecution defendants to arresting officers or prosecutors. In *Jordan*, for example, we stated that "[a] non-arresting officer who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment." *Jordan*, 487 F.3d at 1354. To establish proof of causation for non-arresting officers, the plaintiff generally must show that the seizure was "the result of deception or undue pressure by the defendant policemen," as opposed to the intervening acts of others, which ordinarily "break the chain of causation." *See Barts v. Joyner*, 865 F.2d 1187, 1195 (11th Cir. 1989) (discussing liability for damages in a § 1983 false-arrest case).

Ultimately, however, we need not decide the parameters of § 1983 liability for non-law-enforcement defendants in malicious-prosecution cases. Instead, we conclude that, even assuming Lopez caused the prosecution, summary judgment was still proper on Blue's § 1983 malicious-prosecution claim because he has not

established that he suffered a violation of his Fourth Amendment right against unreasonable seizures.

## B.

To prove his § 1983 malicious-prosecution claim, Blue must establish, in addition to the common-law elements of malicious prosecution, a violation of his Fourth Amendment right against unreasonable seizures. *See Blue*, 901 F.3d at 1357. In other words, he must show that he was arrested without probable cause. *See Paez*, 915 F.3d at 1285.

Blue maintains that Lopez knowingly made false statements to the police, which resulted in a violation of his Fourth Amendment rights. As support for this theory, he relies on caselaw, stemming from *Franks v. Delaware*, 438 U.S. 154 (1978), which "prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen." *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999); *see Whiting v. Traylor*, 85 F.3d 581, 585 n.5 (11th Cir. 1996) ("Knowingly making false statements to obtain an arrest warrant can lead to a Fourth Amendment violation."). This rule is limited "to cases of perjurious or recklessly false statements or omissions," and does not apply to "negligent misrepresentations or omissions." *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir. 1994). And no Fourth Amendment violation occurs if, after setting aside the false statements, there still exists "sufficient content . . . to support a finding

10

of probable cause." *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997) (quotation marks omitted).

We first examine whether this case involves "perjurious or recklessly false statements." *See Kelly*, 21 F.3d at 1554. Blue contends that, under his version of events, Lopez engaged in knowing falsity because she knew that Blue did not commit any offense when she told police that he rammed his van into her car and then "continued backing into her vehicle until he had created a space where he could flee." In contrast, Blue testified that Lopez initiated contact by ramming the back of his van and that, after the initial collision, he was able to leave without hitting Lopez's car.

However, Blue himself contradicted this version of events in a videotaped interview with law enforcement after his arrest. In the interview, although Blue maintained that Lopez struck him first, he admitted that he then used his van to push Lopez's car out of the way. In particular, he stated that, after the initial contact with Lopez's car, he put the van in reverse, "hit the gas, pushed her out of the way, and took off." And despite Blue's creative efforts on appeal to inject some ambiguity into this comment, it cannot be viewed as anything other than an admission that he intentionally backed his van into Lopez's car to "push[] her out of the way." Accordingly, while the parties disputed and continue to dispute who caused the

11

initial collision, their statements to law enforcement about the events that followed were largely consistent.

We assume for purposes of this opinion that a jury could find that Lopez lied about her responsibility for the initial collision between her car and Blue's van. But because there is video evidence of Blue admitting to police that he intentionally made contact with Lopez's car to push her out of the way, no reasonable jury could find that Lopez's similar statements to police were made either intentionally or with a reckless disregard for the truth. *See Kelly*, 21 F.3d at 1554 (explaining that the *Franks* rule is limited "to cases of perjurious or recklessly false statements or omissions made by a police officer in support of a warrant"); *Franks*, 438 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient."). As a result, the use of those statements to establish probable cause does not violate the Fourth Amendment. *See id.*

Having clarified the falsehood at issue, we consider whether Lopez's alleged falsehood—that Blue caused the initial collision instead of Lopez—resulted in an arrest without probable cause.[1] *See Madiwale*, 117 F.3d at 1326 (stating that even intentional falsehoods or omissions will invalidate a warrant only if removing the

---

[1] We reject Blue's claim that Lopez herself was required to possess probable cause before reporting Blue's actions to police. Blue cites no authority for this proposition, and he appears to disavow it in his reply brief. The mere fact that Lopez relayed information to police did not amount to a seizure or authorize a seizure that must be justified by the Fourth Amendment's probable-cause requirement.

falsehood or including the omission would have prevented a finding of probable cause). We conclude that Blue has not established a genuine issue of material fact on this matter.

Setting aside the allegedly false statement about the initial collision, the officer who applied for the arrest warrant still had reason to believe that Blue intentionally used his car to push Lopez's car out of the way, causing damage to Lopez's car and putting her in fear. *See, e.g.*, *Bush v. State*, 601 S.E.2d 511, 513 (Ga. Ct. App. 2004) (affirming an aggravated assault conviction where the defendant intentionally caused a car collision that "caused only slight damage"); *Frayall v. State*, 576 S.E.2d 654, 656 (Ga. Ct. App. 2003) ("Although an automobile is not a deadly weapon per se, it may become one depending upon the manner in which it is used."). Lopez told police—consistent with Blue's post-arrest statements[2]—that Blue "continued backing into her vehicle until he had created a space where he could flee." Although the use of his van did not cause Lopez any injury, it caused damage to her vehicle, and Lopez stated that she feared for her safety. *See id.* Plus, Blue left the scene of the accident and did not report the incident to police. In these circumstances, we cannot say that Blue's arrest was unsupported by probable cause.

---

[2] Because Blue's statements came after his arrest, they would not have been known to a reasonable officer applying for the arrest warrant. So we cannot directly rely on those statements to justify the arrest itself.

13

While Blue contends that a reasonable jury could find that no aggravated assault was committed, "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Adams v. Williams*, 407 U.S. 143, 149 (1972).  In seeking the arrest warrant, the officer "need not have in hand evidence sufficient to obtain a conviction." *Von Stein v. Brescher*, 904 F.2d 572, 578 n.9 (11th Cir. 1990).

Because we conclude that, even in the light most favorable to Blue, no reasonable jury could find that Blue's Fourth Amendment right against unreasonable seizures was violated, he cannot establish an essential element of his malicious-prosecution claim under § 1983.  *See Blue*, 901 F.3d at 1357.  We therefore affirm the grant of summary judgment against him.

## IV.

For the reasons stated, we affirm the district court's grant of summary judgment to Lopez on Blue's claim of malicious prosecution under § 1983.

**AFFIRMED.**

14